```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Anthony Jorden Loscar,         :

       Plaintiff,              :

     v.                        :Case No. 2:15-cv-3110

                               :CHIEF JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social          Magistrate Judge Kemp
Security,                      :

       Defendant.              :
```

                    REPORT AND RECOMMENDATION

                         I.   Introduction

Plaintiff, Anthony Jorden Loscar, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on May 7, 2012, and alleged that Plaintiff became disabled on June 9, 2012.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on May 22, 2014. In a decision dated July 31, 2014, the ALJ denied benefits. That became the Commissioner's final decision on November 13, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on March 7, 2016. Plaintiff filed a statement of specific errors on April 28, 2016, to which the Commissioner responded on August 17, 2016. Plaintiff filed a reply brief on September 6, 2016, and the case is now ready to decide.

     II.   Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 46 years old as of the date of the

hearing and who completed twelve years of schooling but did not graduate, testified as follows. His testimony appears at pages 47-72 of the administrative record.

First, Plaintiff was asked about any history of substance abuse. He said that he had been an alcoholic for some time but had stopped drinking four years before the hearing, when he had surgery for diverticulitis and colitis.

Next, Plaintiff was asked about his prior work. He said that he was a box maker, a job which required standing and lifting up to 50 pounds. He also operated a forklift. He had also been a noodle maker. He stood during the performance of that job and lifted more than 20 pounds. More recently, he had worked at a Wal-Mart stocking freezers and also unloading trucks. He quit that job due to his diverticulitis.

Plaintiff testified that his condition had worsened over the past few years, particularly his anxiety. He worried constantly and had difficulty sleeping. His intestinal problems caused him to need to use the restroom constantly and also caused other physical issues. He experienced gastric pain on a daily basis. Increased physical exertion increased his symptoms, particularly lifting over 20 pounds. Those symptoms included dizziness. He had found counseling helpful to deal with his anxiety.

On a typical day, Plaintiff might take a short walk or do some yard work. He did not do household chores like cooking, cleaning, or grocery shopping. He left the house only to go to medical appointments or pick up prescriptions. On a good day, he would have a bowel movement two or three times, but that could increase up to 20 on a bad day. He had more bad days than good. Finally, he testified that he was embarrassed to be around people and that worsened his anxiety.

### III.  The Medical Records

The pertinent medical records are found beginning at page

294 of the record and can be summarized as follows. Because Plaintiff's statement of error relates only to his psychological condition and limitations, the Court will focus on the records relating to that issue.

A form completed by someone at Family Health Care, Inc., in McArthur, Ohio, on August 13, 2012, stated that Plaintiff's psychological conditions included generalized anxiety disorder and panic attacks. His mood was described as anxious and occasionally depressed, and his anxiety limited his ability to interact with strangers. (Tr. 327-29).

A depression screening was done by Dr. Able on October 9, 2012. Plaintiff reported feeling depressed nearly every day. He was rated as having moderately severe depression. He was diagnosed with an adjustment disorder and was to continue with counseling. (Tr. 362-65). Progress notes after that date show that he had a continuing issue with anxiety and that his concentration improved after taking Adderall. Otherwise, the progress notes do not appear to address his limitations.

State agency psychologists also commented on Plaintiff's mental residual functional capacity. Dr. Hoffman said that Plaintiff had a moderate limitation in his ability to maintain attention and concentration for extended periods, to deal with normal work stress, and to respond appropriately to changes in the work setting. She explained that these limitations still permitted Plaintiff to comprehend, remember, and carry out simple and occasional complex instructions, and to adapt to a setting in which duties are routine and predictable as long as changes were explained and introduced slowly. (Tr. 110-11). However, a subsequent reviewer, Dr. Rivera, utilizing the Drummond ruling (SSR 98-4), adopted the mental residual functional capacity finding made by an ALJ in connection with an earlier application for benefits. (Tr. 134). That ALJ found

that Plaintiff could do simple, routine tasks with only an occasional change in routine work setting.  (Tr. 89).

### IV.   The Vocational Testimony

Micha Daoud was called to testify as a vocational expert at the administrative hearing.  That testimony begins at page 73 of the administrative record.

The expert first testified about Plaintiff's past relevant work, stating that the grocery store position was medium and unskilled, as were the box maker job and the grocery cart attendant job.  The forklift operator position was medium and semi-skilled and the noodle maker job was heavy and semi-skilled, but Plaintiff performed it at the medium exertional level.

Next, the expert was asked some questions about someone with Plaintiff's background and who could work at the light exertional level, could climb ramps or stairs occasionally, and could occasionally balance, kneel, stoop, crouch, and crawl.  The person also was limited to the performance of simple, routine tasks with only occasional changes in the work setting.  The expert said that someone with those restrictions could not do Plaintiff's past jobs, but could work as a fast food worker, product assembler, and vending machine attendant, and that there were many such jobs available in the national economy.  Finally, the expert identified sedentary work that someone with those restrictions could do, including assembler, packager, and inspector, and said that none of those jobs would allow for two extra work breaks per day or for restroom breaks at will.

### V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 25-39 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2014. Second, she found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including diverticulitis/colitis, back pain, depression, anxiety, and attention deficit hyperactivity disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level, being able to sit for six hours or stand for six hours in a workday and to lift 20 pounds occasionally and ten pounds frequently. Further, he could climb ladders or stairs occasionally, and could occasionally balance, kneel, stoop, crouch, and crawl. Finally, Plaintiff was limited to the performance of simple, routine tasks with only occasional changes in the work setting

With these restrictions, the ALJ concluded that Plaintiff could not perform his past relevant work. However, he remained able to do the light jobs identified by the vocational expert, including fast food worker, production assembler, and vending machine attendant, and he could also do the sedentary jobs she identified. The ALJ further found that these jobs existed in significant numbers in the economy. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of errors, Plaintiff raises a single issue. He asserts that the ALJ failed to include limitations in the hypothetical question and in the residual functional capacity finding which accounted for all of Plaintiff's severe impairments. In particular, he argues that the ALJ did not

account for documented limitations in concentration, persistence, and pace, and in dealing with everyday work stress. This claim is evaluated under the following legal standard.

    Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

    Plaintiff begins his argument by noting that, at step three of the sequential evaluation process, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace, and that this finding was consistent with the medical evidence of record. However, when assessing Plaintiff's mental

residual functional capacity, the ALJ did not articulate any restrictions based on such limitations. Noting that one of the state agency reviewers found that Plaintiff was moderately limited in this area and in the area of dealing with work stress, and relying on the Court of Appeals' decision in Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010), Plaintiff contends that the ALJ erred by not including such limitations in the mental residual functional capacity finding. This, in turn, produced unreliable vocational testimony because the vocational expert was not asked to assume such limitations when she testified about jobs which someone with Plaintiff's restrictions could perform.

It is important to note, first, that although the ALJ did make the finding at step three which Plaintiff relies on, the ALJ expressly states that the limitations assessed in connection with the "B" criteria which apply to many psychological impairments "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 30-31). This, the focus of the Court's inquiry must necessarily be the ALJ's residual functional capacity analysis, and not the severity assessment made at steps 2 and 3. See, e.g., Jenkins v. Colvin, 2016 WL 3390587, *4 (S.D. Ohio May 27, 2016), adopted and affirmed 2016 WL 3365418 (S.D. Ohio June 17, 2016), which cites, inter alia, Dotson v. Comm'r of Social Security, 2014 WL 6909437, *6 (S.D. Ohio Dec. 8, 2014), adopted and affirmed 2015 WL 1006087 (S.D. Ohio March 6, 2015), for the proposition that "[w]hen an ALJ specifically differentiates between the two findings and does not incorporate those limitations into his residual functional capacity determination, Ealy is inapplicable."

The ALJ explained her mental residual functional capacity

finding this way.  First, she acknowledged the few statements made by treating sources, which indicated that Plaintiff had depressive symptoms which fell in the moderate range and that Adderall had increased his motivation and helped his mood.  (Tr. 35).  The ALJ said that if this were a disabling condition, Plaintiff would have sought more aggressive treatment.  She then recounted his activities of daily living, which she also viewed as inconsistent with a mental disability.  She believed them to be consistent with an ability to perform simple and routine tasks.  (Tr. 36).

Turning to the medical evidence, the ALJ concluded that both state agency reviewers affirmed the residual functional capacity finding made by the prior ALJ, and their opinions were accorded significant weight.  Id.  She did not believe that any new evidence about psychological limitations materially changed that assessment.  Thus, the ALJ made an identical finding here.  The dispositive question in this case is whether that residual functional capacity finding is supported by substantial evidence.

The ALJ does not appear to have been entirely accurate in her characterization of one of the two state agency opinions, that of Dr. Hoffman.  Dr. Hoffman did not specifically apply the Drummond ruling and found some limitations (but in the area of adaptation, and not the area of concentration, persistence or pace) not included in the prior ALJ's decision, and not incorporated into the present decision - particularly the concept that changes in the work setting should be well explained and introduced slowly, which may or may not be consistent with the notion that the work setting could only involve occasional changes.  Nevertheless, the ALJ implicitly chose to credit Dr. Rivera's conclusion, and she found that there was no new evidence which called the prior RFC finding into question.  Under the Drummond ruling, "When adjudicating a subsequent disability claim

with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding."  Plaintiff has not argued persuasively here that there is new and material evidence relating to his mental residual functional capacity, nor has he argued that Dr. Rivera's assessment is not supported by substantial evidence.  To the extent that Dr. Hoffman's opinion was slightly more restrictive (and, again, that is not at all clear), the ALJ was free to make a different finding so long as that finding is supported by substantial evidence.  The Court concludes that it was.  And, as this Court held in <u>Frazier v. Comm'r of Social Security</u>, 2015 WL 4205210, *5 (S.D. Ohio July 10, 2015), adopted and affirmed 2015 WL 5145557 (S.D. Ohio Sept. 1, 2015), "the key question is not whether an ALJ found difficulties in concentration, persistence, and pace at step three, but whether the RFC determination has substantial support in the record."  Given the existence of substantial evidence to support the ALJ's finding, and given the inapplicability of <u>Ealy</u> to this case, the Court finds no merit in Plaintiff's single statement of error, and therefore recommends that the statement of error be overruled.

## VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

## VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

      The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

        /s/ Terence P. Kemp  
        United States Magistrate Judge